IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QVC, INC. and QHEALTH, INC., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civ. No. 10-094-SLR |
| | ) |
| YOUR VITAMINS, INC. d/b/a | ) |
| PROCAPS LABORATORIES | ) |
| and ANDREW LESSMAN, | ) |
| | ) |
| Defendants. | ) |

Joseph Grey, Esquire and Sean T. O'Kelly, Esquire of Cross & Simon, Wilmington, Delaware. Counsel for Plaintiffs. Of Counsel: Jonathan E. Moskin, Esquire and Britton Payne, Esquire of Foley & Lardner LLP, New York, New York.

Jack B. Blumenfeld, Esquire and Rodger D. Smith II, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Defendants. Of Counsel: Jonathan F. Cohn, Esquire, Gordon D. Todd, Esquire, Matthew D. Krueger, Esquire and Katie M. Durick, Esquire of Sidley Austin LLP, Washington, D.C., and James D. Arden, Esquire of Sidley Austin LLP, New York, New York.

**MEMORANDUM OPINION**

Dated: November 29, 2010
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

QVC, Inc. ("QVC") and QHealth, Inc. ("QHealth") (collectively, "plaintiffs") brought claims for false advertising under the Lanham Act, 15 U.S.C. § 1125(a) (hereinafter, "§ 43"), common law false advertising, violation of the Delaware Consumer Fraud Act, 6 Del. C. § 2531 et seq., and violation of the Delaware Uniform Deceptive Trade Practices Act ("DTPA") against defendants Andrew Lessman ("Lessman") and Your Vitamins, Inc. d/b/a ProCaps Laboratories ("ProCaps"). (D.I. 1) Plaintiffs' claims stem from a series of internet posts (or "blogs") by Lessman relating to his and plaintiffs' respective dietary supplement products. Four days after filing their complaint, plaintiffs filed a motion for a temporary restraining order ("TRO"), preliminary injunction and expedited discovery seeking that the court compel defendants to withdraw the material at issue. (D.I. 4) Plaintiffs amended their complaint in June 2010 to add a breach of contract claim. (D.I. 47) The court denied plaintiffs' motion for a TRO, preliminary injunction and expedited discovery on July 27, 2010.[1] (D.I. 60) A scheduling order was entered November 3, 2010. (D.I. 90) Presently before the court is defendants' motion to dismiss plaintiffs' breach of contract claim. (D.I. 48)

## II. BACKGROUND

The court incorporates by reference the detailed background provided in its prior opinion (D.I. 60), and provides below only those facts most pertinent to the motion at bar. QVC and QHealth jointly market a line of dietary supplements under the "Nature's Code" trademark over QVC's broadcast cable television network and website. (D.I. 5 at

---

[1] The court will address plaintiffs' motion for reconsideration by separate opinion. (D.I. 67)

3) Among these are plaintiffs' "Resveratrex®" and "Hair, Skin & Nails®" supplements (hereinafter, "Nature's Code Hair"). (*Id.*; D.I. 30 at 4) Beginning in 1992, Lessman began marketing, on QVC's network, dietary supplements on behalf of his company, ProCaps. (D.I. 5 at 3; D.I. 30 at 2) Lessman left QVC in 1997 and began marketing his products with QVC's primary competitor, the Home Shopping Network ("HSN"). (*Id.*) Several years later, Lessman and ProCaps (collectively, "defendants") began marketing their "Healthy Hair Skin & Nails®" product (hereinafter, "Healthy Hair"). (D.I. 30 at 2) That product has generated more than $70 million in revenue for ProCaps. (D.I. 30 at 2) Defendants also market "Resveratrol-100®," a product which competes with Reservatrex®. (D.I. 5 at 7)

In November 2006, Lessman and QVC began negotiating Lessman's return to QVC's network. (D.I. 30 at 2-3; D.I. 34 at 11) The negotiations eventually stalled and defendant Lessman remained at HSN. (D.I. 30 at 3; D.I. 34 at 11-12) Lessman contends that, during conversations with QVC executives, he disclosed the success of Healthy Hair. (D.I. 30 at 3) Plaintiffs began marketing Nature's Code Hair in January 2010. (*Id.*) Shortly thereafter, Lessman began publishing blogs on his website[2] that were critical of plaintiffs' products. (D.I. 5 at 4; D.I. 30 at 4-5) The nature of Lessman's statements are the subject of plaintiffs' false advertising, consumer fraud and unfair competition claims. One example discussed in the court's prior opinion was Lessman's statement about hyaluronic acid, an ingredient in Nature's Code Hair®, that "there is a significant body of troubling research that connects it to cancer[.]" (D.I. 34, ex. C)

---

[2] *Available at* http://andrew.procapslabs.com/default.aspx; *also available at* http://www.wordsonwellness/default.aspx.

To resolve their disputes concerning Lessman's departure from QVC, defendants and QVC entered into a settlement agreement in January 1997, which forms the basis for the present dispute (hereinafter, "the Agreement"). The Agreement contains a forum selection clause, providing that "QVC and [ProCaps] each hereby consent to the exclusive jurisdiction of the United States District Court for the Eastern District of Pennsylvania in all matters arising out of this agreement." (D.I. 45 at § 5(c)) In their amended complaint, plaintiffs claim that Lessman's public statements, "including in particular the [unsealed] Declaration of Andrew M. Lessman" filed in this litigation, violate the substantive terms of the Agreement and have caused irreparable injury to plaintiffs. (D.I. 47 at §§ 87-91) Specifically, the Agreement provides that defendants are precluded from "making any oral or written remarks disparaging QVC or its products, or both." (D.I. 45 at 6; D.I. 54 at 4) It also provides an acknowledgment by defendants that any breach of the provision within which the foregoing falls would result in irreparable damage to plaintiffs and would justify "preliminary and injunctive relief" against them. (D.I. 45 at 7; D.I. 54 at 4)

## III. STANDARD

In reviewing a motion filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon

which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007) (interpreting Fed. R. Civ. P. 8(a)) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."[3] *Id.* at 1959.

## IV. DISCUSSION

### A. Forum Selection Clause

The forum selection clause of the Agreement is clear and unambiguous: suits concerning the Agreement must be brought in the United States District Court for the Eastern District of Pennsylvania.[4] (D.I. 45 at 11 ("QVC and [ProCaps] each hereby consent to the **exclusive jurisdiction** of the United States District Court for the Eastern District of Pennsylvania in **all matters** arising out of this agreement.")) (emphasis added) Forum selection clauses are presumptively valid and are entitled to great

---

[3]The Agreement itself provides that its existence and its terms are confidential, and it was filed (by plaintiffs) under seal in this litigation. (D.I. 45 at 10) The court refers to those provisions most essential to its holding, noting that plaintiffs' answering brief quotes these relevant passages and is not filed under seal.

[4]Plaintiffs argue that the forum selection language contained in the "governing law" section of the Agreement is rendered "ambiguous" by language appearing in a separate "confidentiality" section of the Agreement, providing that relief for a breach of confidentiality may be sought from "any court of competent jurisdiction." (D.I. 54 at 2; D.I. 45 at 10) Plaintiffs commensurately argue that the Agreement must be "specifically enforced as written" with respect to the injunctive relief contemplated therein, belying their previous argument. (D.I. 54 at 15 et seq.)

weight. *See Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983) (citation omitted). In *Coastal Steel*, the Third Circuit stated that

> a forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes[:] (1) that it is the result of fraud or overreaching; (2) that enforcement would violate strong public policy of the forum; or (3) that enforcement would in the particular circumstances of the case result in jurisdiction so seriously inconvenient as to be unreasonable.

*Id.* at 202. To this end, plaintiffs argue that: (1) there is a strong public policy against splitting a cause of action into two suits concerning the same operative facts; and (2) defendants have waived their rights to enforce the clause by not opposing plaintiffs' filing the amended complaint. Although not particularly relevant to the factors at issue, plaintiffs also argue that defendants were first to mention the Agreement in this case (in their opposition to plaintiffs' preliminary injunction motion) and that defendants' counsel indicated that defendants contemplated their own counterclaim for alleged breach of the Agreement.

Plaintiffs provide no caselaw supporting their theory that defendants' acquiescence to plaintiffs' amending their complaint constitutes a waiver of defendants' right to invoke the forum selection clause.[5] As defendants point out, leave to amend under Federal Rule of Civil Procedure 15 is freely granted, even as to claims that are "vulnerable to dismissal under Rule 12(b)(6)." *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). The court declines to impose a rule requiring defendants to

---

[5]Plaintiffs argue that defendants have "waived any objection to personal jurisdiction." (D.I. 54 at 12 et seq.) Jurisdiction is not at issue. Plaintiffs' sole cited case on this issue, *Botman International, B.V. v. International Produce Imports, Inc.*, 205 Fed. Appx. 937, 941 (3d Cir. 2006) (unpublished), concerned the waiver of the forum selection clause defense on appeal where defendants failed to argue its applicability on summary judgment.

substantively challenge claims through oppositions to motions to amend rather than a Rule 12 motion to dismiss. Having not clearly articulated a cognizable public policy violation at issue in this case, nor any reason that the Eastern District of Pennsylvania is so "seriously inconvenient as to be unreasonable," the court finds that the forum selection clause contained in the Agreement controls in this case. *See Coastal Steel*, 709 F.2d at 202.

## B. Transfer

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "A court may sua sponte cure jurisdictional and venue defects by transferring a suit under the federal transfer statutes, 28 U.S.C. §§ 1406(a) and 1631, when it is in the interests of justice." *See Forest Labs. Inc. v. Cobalt Labs. Inc.*, Civ. No. 08-21, 2009 WL 605745 at *12, n.9 (D.Del. Mar, 9, 2009) (citing *Trujillo v. Williams*, 465 F.3d 1210, 1222 (10th Cir.2006) and *Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 218 n.9 (3d Cir. 2002)). Upon consideration of these interests,[6] and having found that the forum selection

---

[6]Although emphasizing that "there is no definitive formula or list of factors to consider," the Third Circuit has identified potential factors it characterized as either private or public interests to be considered on a motion to transfer, including private interests as follows: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (hereinafter, "*Jumara*"). Public interests to be considered include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or

clause contained in the Agreement controls in this case, venue is inappropriate in this court and, in lieu of dismissal of this claim, the court transfers the action to the District Court for the Eastern District of Pennsylvania. Plaintiffs' Lanham Act and consumer fraud claims at bar substantially overlap their breach of contract claim.[7] To prove their claim for false advertising, for example, plaintiffs must demonstrate that defendants made false or misleading statements or descriptions of fact in commercial advertising or promotion that "misrepresent[ed] the nature, characteristics, qualities, or geographic origin of his . . . goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). The alleged misrepresentations at issue concern Lessman's disparagement of Nature's Code Hair and other of plaintiffs' vitamin products. Disparagement of plaintiffs' products is expressly prohibited by the Agreement and underlies the breach of contract claim. (D.I. 45 at § 2(f)) Accordingly, plaintiffs' amended complaint provides the same factual basis in support for all of plaintiffs' claims. (D.I. 47)

The court finds, therefore, that the interests of justice are satisfied by the transfer of the instant case to Pennsylvania. Moreover, the Agreement provides that

---

inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.*

[7]The court notes at this juncture the possibility that Pennsylvania law, specifically, the "gist of the action" doctrine, may prevent plaintiffs from simultaneously pursuing their tort claims. *See, e.g., Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 229 (3d Cir. 2008) (citing *eToll Inc. v. Elias/Savion Advertising Inc.*, 811 A.2d 10, 14 (2002)). Although the court noted "substantial" overlap between the contract and tort claims at bar in the context of its transfer justification, the court makes clear that it makes no explicit findings regarding the nature of plaintiffs' claims in this regard. Accordingly, the determination is solely within the determination of the transferee court.

Pennsylvania law governs disputes thereunder. (*Id.* at § 5(c)) The District Court for the Eastern District of Pennsylvania is familiar with the application of the law of Pennsylvania and has an interest in deciding the parties' controversy under that law. In signing the Agreement, the parties consented to that venue and choice of law. The foregoing considerations are sufficient to justify transfer of this case notwithstanding congestion in this district (due to judicial vacancy), another *Jumara* factor.

## V. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (D.I. 48) is denied as moot, and the court transfers the case at bar to the United States District Court for the Eastern District of Pennsylvania. An appropriate order shall issue.